UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL MORALES, JR., | No. 21-cv-00995-NODJ-CDB |
| Plaintiff, | |
| v. | **ORDER** |
| CITY OF MCFARLAND, et al., | |
| Defendants. | |

This matter is before the Court on the motion by Defendants City of McFarland and Officer Rivera to dismiss Plaintiff Miguel Morales Jr.'s First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, ECF No. 13.)  Morales opposes the motion, (Opp'n, ECF No. 16), and Defendants have replied (Reply, ECF No. 17.)  As explained below, the Court **GRANTS** the motion to dismiss with leave to amend.[1]

### I. BACKGROUND

In September 2020, Morales, a minor, was riding a dirt bike on city streets without a bike helmet when Officer Christopher Rivera attempted a traffic stop for

---

[1] In the interests of justice and addressing the heavy civil caseloads in the Fresno courthouse, the undersigned resolves only the pending motion to dismiss (ECF No. 13).  Upon resolution of this motion, unless or until otherwise ordered by the court, the case will remain as currently assigned and will retain case number No. 1:21-cv-00995-NODJ-CDB.

speeding and/or riding without a helmet. (*See* First Am. Compl. ¶ 38–39, ECF No. 10 ("FAC")). There was a brief chase, and then Morales made a U-turn and began riding in the opposite lane of traffic. (FAC ¶ 40.) Officer Rivera changed course, began driving in the same lane as Morales, and purportedly drove the police car head on into Morales. (*Id.* ¶ 41.) Morales flew off the dirt bike and sustained serious injuries. (*Id.* ¶ 42.)

Morales filed a first amended complaint in federal court against the City of McFarland and Officer Rivera, alleging eight claims:

1. Fourth Amendment Excessive Force claim (§ 1983);
2. Fourteenth Amendment Substantive Due Process claim (§ 1983);
3. *Monell* claim: Ratification (§ 1983);
4. *Monell* claim: Failure to Train (§ 1983);
5. *Monell* claim: Unconstitutional Policy or Custom (§ 1983);
6. State law claim for Battery;
7. State law claim for Negligence; and
8. State law claim for Violation of Civil Code section 52.1.

(*See generally* FAC.) The City and Officer Rivera filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Morales fails to state a cause of action regarding claims two, three, four, and five. (*See generally* Mot. to Dismiss, ECF No. 13.) The Court took the matter under submission without hearing oral argument. (ECF No. 15.)

## II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the

light most favorable to the nonmoving party." *Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

These same standards apply to claims against municipal governments under § 1983. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). A plaintiff's allegations "may not simply recite the elements" of a claim under *Monell*. See *id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The complaint must "contain sufficient allegations of underlying facts to give fair notice" of the plaintiff's claims and allow the municipal government "to defend itself effectively." *Starr*, 652 F.3d at 1216. The plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### III. ANALYSIS

#### A. Claim Two Against Rivera: Substantive Due Process under the Fourteenth Amendment

Morales asserts a Fourteenth Amendment substantive due process claim against Officer Rivera's purported use of excessive force in a car chase on the grounds that he is pleading an alternative theory of liability. (Opp'n at 5–6.)

Ordinarily, "a free citizen's claim that law enforcement officials used excessive force in the course of making an . . . investigatory stop . . . [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims." *Id.* at 395; *accord Price v. Sery*, 513 F.3d 962, 967 (9th Cir. 2008) (holding that claims about the use of force—deadly or allegedly excessive—by law enforcement officers were proper under modern Fourth Amendment search-and-seizure analysis, rather than substantive due process). Relying on *Lewis*, Morales contends that "[w]here [a Fourth Amendment] adjudication is not [yet] made, a claim for Fourteenth Amendment is proper." (Opp'n at 6.) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Even if Morales seeks to preserve a substantive due process claim under an alternative theory of liability, however, the complaint does not plead sufficient facts to indicate that Officer Rivera had an improper subjective state of mind.

"The Supreme Court has made it clear . . . that only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 846). The Ninth Circuit has since held that a law enforcement officer's conduct may only be found to shock the conscience if the officer acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Moreover, the "purpose to harm standard applies categorically to Fourteenth Amendment substantive due process claims arising out of high-speed police chases regardless of whether an 'emergency' or 'non-emergency' situation gave rise to the chase." *Clugston v. City of Garden Grove*, No. 8:21-cv-01832-JVS-ADS, 2022 WL 2255719, at *3 (C.D. Cal. Jan. 25, 2022). The purpose to harm standard is a subjective

standard of culpability, where the alleged facts must demonstrate an intent to inflict force beyond that required by a legitimate law enforcement objective, such as an intent to terrorize, cause harm, or kill.  *See id.* (citing *Lewis*, 523 U.S. at 855); *see also Porter*, 546 F.3d at 1140–41 (concluding that "where force against a suspect is meant only to 'teach him a lesson' or to 'get even' then *Lewis* would not shield the officers from liability even though they were ultimately effectuating an arrest'") (quoting *Davis v. Twp. of Hillside*, 190 F.3d 167, 173 (3d Cir. 1999)); *see, e.g.*, *Bingue v. Prunchak*, 512 F.3d 1169, 1177 (9th Cir. 2008) (finding no purpose to harm because "[n]owhere in the record is there any indication that [defendant] acted with an intent to harm, or had any motive other than a desire to do his job").  The "critical consideration is whether the circumstances are such that actual deliberation is practical."  *Porter v. Osborn*, 546 F.3d 1131, 1138 (cleaned up).

In the first amended complaint, Morales alleges that Officer Rivera "attempted to apprehend and seize [him] for a traffic infraction–namely speeding and/or riding a dirt bike without a helmet." (FAC ¶ 39.)  Morales further alleges that a "brief vehicular chase ensued" and upon traveling a few hundred yards, "[Morales] made a U-turn" and began traveling in the opposite direction. (*Id.* ¶ 40.)  Morales then alleges that after traveling a couple of blocks, Officer Rivera, "in an attempt to seize and detain [Morales] . . . used his marked police vehicle as a deadly weapon." (*Id.* ¶ 41.)  And that "[a]ccording to witnesses, Officer Rivera drove his vehicle head-on into [Morales] and his dirt bike." (*Id.*)  As a consequence, "the front driver's side of Officer Rivera's vehicle made contact with [Morales] and his dirt bike, causing [Morales] to fly off his dirt bike and fall headfirst onto the hard pavement–sustaining serious injuries.  At all relevant times, [Morales] was not wearing a helmet–a fact observed to Officer Rivera." (*Id.* ¶ 42.)  Finally, Morales contends that the actions of Officer Rivera were done "with purpose to harm unrelated to any legitimate law enforcement objective.  Specifically, using a fast moving vehicle as a deadly force to apprehend an unarmed person,

hitting a non-dangerous person with a fast moving vehicle . . . shocks the conscience." (FAC ¶ 54.)

But taking the facts in the light most favorable to Morales, the allegations in the Complaint do not suggest any improper intent to terrorize, harm, or kill outside of a legitimate law enforcement goal, as *Lewis* requires. *Lewis*, 523 U.S. at 855. Indeed, "[once] a suspect flees, the Supreme Court has made it clear that the officer has a legitimate law enforcement objective in continuing pursuit until the suspect is apprehended." *Suit v. City of Folsom*, No. 2:16-00807 WBS AC, 2016 WL 4192437, at *4 (E.D. Cal. Aug. 8, 2016). Here, the facts indicate that Officer Rivera was in pursuit of Morales because of a traffic infraction, that Morales made various attempts to evade apprehension, including giving chase, and that Officer Rivera struck the dirt bike with the police car to terminate the chase. (*See* FAC ¶¶ 38–42.) Because Morales does not plead further facts indicating that Officer Rivera acted in excess of legitimate law enforcement goals or used improper force beyond that necessary to terminate the chase, the existing allegations do not meet the facial plausibility required for a Fourteenth Amendment due process violation. *Iqbal*, 556 U.S. at 662 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Thus, the Court finds that Morales fails to allege a cognizable violation of the Fourteenth Amendment necessary to sustain a § 1983 claim against Officer Rivera. The Court grants the motion to dismiss as to claim two without leave to amend. Given the compressed timeframe of this case, Morales does not and cannot plead any facts to demonstrate that Officer Rivera acted with actual deliberation and "purpose to harm" within the meaning of the Fourteenth Amendment. "In general, leave to amend is only denied if it is clear that amendment would be futile and "'that the deficiencies of the complaint could not be cured by amendment.'" *Cabo Distrib. Co.*, 821 F. Supp. 601, 608 (N.D. Cal. Oct. 22, 1992) (internal citations omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to

amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation omitted).

### B. *Monell* Claims Against City and Rivera

To succeed on his section 1983 claim, Morales must allege that he suffered the deprivation of a constitutional right and that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To impose liability on a *governmental entity*, however, requires more. "A county is subject to Section 1983 liability 'if its policies, whether set by the government's lawmakers or by those whose edicts or acts . . . may fairly be said to represent official policy, caused the particular constitutional violation at issue.'" *King v. Cnty. of L.A.*, 885 F.3d 548, 558 (9th Cir. 2018) (citation omitted). The Ninth Circuit has recognized four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Lake v. City of Vallejo*, No. 2:19-cv-01439-DAD-KJN, 2023 WL 4086885, at *8 (E.D. Cal. June 16, 2023) (quoting *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019)).

In the complaint, Morales asserts Officer Rivera violated both his Fourth Amendment right to be free from excessive force (FAC ¶¶ 43–51), and Fourteenth Amendment right to substantive due process (*id.* ¶¶ 53–59). As to his *Monell* claims, Morales asserts (1) that the McFarland Police Department's final decisionmaker ratified this conduct; (2) the City had an unconstitutional policy or custom; and (3) the City otherwise failed to train its police officers in the proper use of force. (*See generally* FAC.)

As discussed above, claims of excessive force are properly within the scope of the Fourth Amendment, and Defendants do not challenge Morales's claim brought under the Fourth Amendment. Thus, for purposes of the motion to dismiss, Morales

////

////

has adequately pled a violation of an underlying constitutional right[2]. The parties also do not dispute that Officer Rivera acted under color of state law: he was working as an officer on the day at issue; he attempted to apprehend Morales, who fled, for a traffic infraction; and he used his marked police car to bring Morales's dirt bike to a stop. (*Id.* ¶¶ 37–42); *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020) ("[T]he critical question is . . . whether [the officer] exhibited sufficient indicia of state authority . . . to conclude that they were acting in an official capacity.")). But a municipality cannot be held liable solely because an employee purportedly committed a violation, "or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). The municipality itself must have acted through an official county policy or custom. *Monell v. Dep't Soc. Servs. City of N.Y.*, 436 U.S. 658, 694–95 (1978); *accord King*, 885 F.3d at 558.

        **i.**        **Unconstitutional Policy or Custom**

Morales's fifth claim alleges that McFarland Police Department had unconstitutional policies and customs: "Defendant City had in place, and had ratified policies, procedures, customs, and practices which permitted and encouraged their peace officers to unjustifiably, unreasonably, and in violation of the Fourth and Fourteenth Amendments use excessive force in situations where such force is not necessary, reasonable or legal against non-dangerous suspects." (FAC ¶ 90.) Morales also alleges that the unconstitutional policies included deficient hiring practices, deliberately indifferent training of law enforcement officers regarding the use of the force, and a custom of overlooking incidents of excessive force. (*See generally* FAC ¶¶ 91–105.) As examples of incidents of excessive force, Morales cites (1) an officer's routine traffic stop of another Latin American minor for riding a motorbike

---

[2] In the opposition brief, Morales cites to only his Fourteenth Amendment claim as the underlying constitutional violation for purposes of *Monell*. (Opp'n at 10–13.) But the first amended complaint cites to underlying violations of both the Fourth and Fourteenth Amendments for *Monell* claims. (FAC ¶ 90.)

without a helmet that resulted in excessive force to the minor and the minor's brother; (2) an officer's warrantless entry of a nearby Latin American minor's home and confiscation of the minor's cell phone as he was filming the above traffic incident; and (3) an officer's arrest of and use of excessive force against a third Latin American minor for jaywalking. (FAC ¶ 97(n).) As to deficient hiring practices, Morales points to the employment of several police officers with "dubious backgrounds" among other questionable hires. (*Id.* at (a)–(i).)

"An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970); *see also Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citations omitted). In deciding whether to grant a motion to dismiss regarding pattern and practice claims, the Court notes "that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality." *Lake*, 2023 WL 4086885, at *10 (granting leave to amend while noting that cited incidents must be sufficiently detailed to put municipality on notice of the alleged policy) (citations omitted). The cited allegations must be "generally similar" to what Morales experienced to support an inference of a practice of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy," *id.* at 12 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)), but need not include the exact same type of excessive force, *Lake*, at *11 (rejecting defendants' argument regarding the level of factual similarity required) (citations omitted).

In assessing the three alleged incidents of excessive force, only one of them involves the use of force by means of a police car. (FAC ¶ 97(n)(i).) The second and fourth incidents cite unspecified uses of excessive force against the suspect minor: "the traffic stop quickly escalated to use of force," and "[McFarland Police Department]

Officers in the course of arrest of minor began to exercise use of excessive force." (*Id.* at (ii), (iv).)  The third incident alleges that a police officer, upon noticing that he was being filmed, "went to the house without a warrant, broke down the door, confiscated the cell phone and arrested the individual." (*Id.* at (iii).)  On balance, there is not enough detail for the Court to plausibly infer a practice of sufficient duration, frequency and consistency regarding excessive force through either the specific use of police vehicles or the use of deadly force more generally.  As to the allegations involving deficient hiring practices, these allegations are too dissimilar from the harm Morales experienced to support any inference of practice or custom.

Consequently, Morales has not sufficiently alleged facts to plausibly show a well-settled pattern, custom, or practice of excessive force.  The Court grants the motion to dismiss as to claim five, but grants leave to amend.

### ii. Failure to Train and Supervise

Morales's fourth claim asserts that the City of McFarland was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees and failed to train its police officers.  (FAC ¶ 78.)  To make a showing of failure to train, Morales must demonstrate that the municipality made a conscious or deliberate choice to disregard the "known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Lake*, 2023 WL 4086885, at *12 (citation omitted).  Morales must show either "a pattern of similar unconstitutional violations by untrained employees," *id.*, or, absent a pattern, that this case falls within a narrow range of circumstances where "the unconstitutional consequences of failing to train could be so patently obvious that [City of McFarland] could be liable under § 1983 without proof of a pre-existing pattern of violations," *id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)).  In dicta, the Supreme Court has said that the need to train police officers in the use of deadly force can be a patently obvious training objective such that failure to do so may show deliberate indifference.  *See City of*

*Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) ("[T]he need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.").

### a)     Multiple Incidents

In his complaint, Morales cites to the same three incidents described above as evidence of failure to train: "[McFarland Police Department] has knowledge of its lack of training in light of similar prior incident's involving minor infraction" (FAC ¶77), and contends that "[t]he first amended complaint specifically alleges instances of [McFarland Police Department] officers escalating traffic violations identical to that which is subject of this lawsuit, by minors in the community the [McFarland Police Department] has jurisdiction over, to an unconstitutional deprivation of life, liberty, and property" (Opp'n at 11-12).  As discussed above, in looking at the incidents, only one of them is like the instant case, but Morales fails to cite any authority for the proposition that one incident is sufficient to show a pattern of constitutional violations. In fact, the Ninth Circuit has held that the existence of only one or two incidents of prior misconduct cannot demonstrate a widespread pattern, custom, or policy. *Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 5068567, at *4 (N.D. Cal. Nov. 3, 2017) (comparing and collecting Ninth Circuit authority).

Moreover, Morales alleges that the factually similar incidents were "within close proximity to the time of this incident."  (FAC ¶ 77(a).)  But absent any indication of a date for the incidents that Morales cites, the Court cannot evaluate whether the City was properly on notice.  The Court concludes that as pled the existing factual allegations do not establish a pattern of constitutional violations.

### b)     Single Incident

Morales alleges that the City failed to train its police officers with respect to the officers' use of vehicles as a means of deadly force, use of less than lethal options,

tactical use of vehicles, or how to give proper warnings before using lethal force. (FAC ¶ 79.) Morales also cites lack of training with respect to diversity, cultural differences, tolerance, and racism. (*Id.* ¶ 80.) As noted in *Canton*, liability may attach for a single incident of excessive force when there is proof of failure to train police officers regarding the use of deadly force. *See City of Canton*, 489 U.S. at 390 n.10; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. of Okla. v. Brown*, 520 U.S. 397 (1997) ("In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.").

The Court's focus as to the training program must be on whether the program is adequate to the tasks the police officers must perform, "and if it is not, whether such inadequate training can justifiably be said to represent 'city policy.'" *Bagley*, at *6 (citing *Canton*, 489 U.S. at 379). Morales must show that the identified deficiency in the training program is closely related to the ultimate injury and that the "deficiency in training actually caused the police officers' indifference." *Id.* at *6.

Here, Morales has not identified any policy or particular defect. Rather, Morales points to a 2012 letter written by a neighboring city's chief of police requesting that the state commission strip McFarland Police Department of its accreditation. (FAC ¶ 81.) Morales also cites to various news stories from 2009, 2011, and 2012 with negative reporting about McFarland Police Department. (*Id.* ¶¶ 21–34.) But while the news stories and related allegations are undisputedly unpleasant, none of these identified deficiencies are closely related to the use of excessive force, nor do they show how the McFarland Police Department's training program was a deliberate or conscious choice resulting in the officers' improper use of force, as *Canton* requires. Accordingly, the Court cannot identify the required causal nexus for purposes of failure to train.

The Court grants the motion to dismiss as to claim four with leave to amend.

### iii. Ratification

In his third claim, Morales alleges that the McFarland Police Department's final policymaker(s) ratified Officer Rivera's conduct and prior similar conduct by other police officers. (FAC ¶¶ 63–70.) Ratification of the decisions of a subordinate by an official with final decision-making authority can be a policy for purposes of municipal liability under section 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To show ratification, a plaintiff must demonstrate that the "authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *Praprotnik*, 485 U.S. at 127). The policymaker must have knowledge of the constitutional violation and actually approve of it. Notably, "[a] single decision by a municipal policymaker 'may be sufficient to trigger Section 1983 liability under *Monell*, even though the decision is not intended to govern future situations,' but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question." *Lassiter v. Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) (citation omitted).

"A mere failure to overrule a subordinate's actions, without more, is insufficient to support a section 1983 claim." *Est. of Sanchez v. Cnty. of Stanislaus*, No. 1:18-cv-00977-ADA-BAM, 2023 WL 7612399, at *24 (E.D. Cal. Nov. 14, 2023) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (finding that ratification ordinarily requires "something more than the failure to reprimand"). For example, "something more" can be additional evidence of a final policymaker's agreement or acquiescence to the challenged conduct, such as conducting an "obviously flawed investigation," or "extreme factual situations." *Perkins v. City of Modesto*, No. 1:19-cv-00126-NONE-EPG, 2022 WL 297101, at *17 (E.D. Cal. Feb. 1, 2022) (citing *Garcia v. City of Imperial*, No. 08cv2357 BTM(PCL), 2010 WL 39457, at *2 (S.D. Cal. Oct. 4, 2010).

Morales alleges that McFarland Police Department's final decisionmaker had prior knowledge of similar incidents. (FAC ¶ 68.) And Morales identifies the same

three incidents of excessive force discussed above, alleging they were "knowingly, consciously and affirmatively" ratified by the final decisionmaker. (*Id.*) These incidents include (1) an officer's routine traffic stop of another Latin American minor for riding a motorbike without a helmet that resulted in excessive force to the minor and the minor's brother; (2) an officer's warrantless entry of a nearby Latin American minor's home and confiscation of the minor's cell phone as he was filming the above traffic incident; and (3) an officer's arrest of and use of excessive force against a third Latin American minor for jaywalking. (*Id.*)

In all three prior incidents, Morales alleges that "the final decisionmaker failed to suspend, correct, terminate, or discipline officers of the [McFarland Police Department]." (FAC ¶ 68.) Regarding the incident at issue in this case, Morales further alleges the final decisionmaker determined that the instant incident was "within policy" and that the officers "should not be reprimanded in any manner." (*Id.* at ¶¶ 69–70.) Despite alleging knowing, conscious, and affirmative ratification, however, the underlying facts Morales provides do not sufficiently demonstrate the final decisionmaker's deliberate conduct in any incident other than an absence of discipline for the officers' actions.

District courts in the Ninth Circuit are split regarding whether ratification occurs when a final decisionmaker determines that the challenged conduct was within policy. *Compare Weishaar v. Cnty. of Napa*, No. 14-cv-01352-LB, 2016 WL 7242122, at *14 (N.D. Cal. Dec. 15, 2016) ("Finding that an officer acted within policy does not alone amount to a *Monell* ratification.") *with Thomas v. Cannon*, No. 3:15-05346 BJR, 2017 WL 2289081, at *13 (W.D. Wash. May 25, 2017) ("A rational jury could find that [the officer's] decision . . . was not constitutionally justified, and that [the official policymaker] ratified that unconstitutional decision by determining it was lawful and within policy."). But this Court need not resolve this split because Morales has not provided any underlying facts to support the allegation the decisionmaker determined Officer Rivera's conduct was within policy. Rather, the Court concludes

that the existing facts simply demonstrate an absence of action, which is insufficient to support a *Monell* claim. "To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law [creating an] end run around *Monell*." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)), overruled on other grounds by *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Because Morales has not made out a ratification claim, this Court grants the motion to dismiss as to claim three with leave to amend.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the motion to dismiss (ECF No. 13) with leave to amend and further orders as follows:

1. The first amended complaint (ECF No. 10) is dismissed with leave to amend as it fails to state a cognizable claim as to claims two, three, four, and five.
2. Claim two is dismissed without leave to amend.
3. Claims three, four, and five (*Monell* claims) are granted leave to amend.
4. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint.

This order resolves ECF No. 13.

IT IS SO ORDERED.

Dated:   **January 8, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE